**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

JOHN FRANKFURT,

              Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,[1]

              Defendant.

No. C18-79-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

---

## I.    INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge.  Doc. No. 23.  Judge Mahoney recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff John Frankfurt's application for disability insurance (DIB) benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et. seq., and for supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, et. seq.  Frankfurt filed a timely objection to the R&R.  Doc. No. 24. The background is set forth in the R&R and is repeated herein only to the extent necessary.

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019.  Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

## II.    APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188

(8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.    *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error").

As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.    THE R&R

Frankfurt protectively filed an application for DIB and SSI on February 26, 2015, alleging an onset date of March 26, 2010, due to major depressive disorder, cluster B personality disorder, antisocial personality disorder, chronic migraine headaches, insomnia, restless leg syndrome and high pulse. AR 20, 26, 127, 140. A hearing was held before an Administrative Law Judge (ALJ) on June 27, 2017. AR 70. After the hearing, the ALJ applied the familiar five-step evaluation and found that Frankfurt was not disabled as defined by the Act. AR 20–34. Frankfurt argued the ALJ erred by: (1) not giving good reasons for discounting his subjective complaints; (2) assigning greater weight to the medical opinions of the non-examining state agency consultants than to the medical opinions submitted by his treating neurologist and psychiatrist; and (3) not including several limitations in the assessment of Frankfurt's residual functional capacity (RFC). Judge Mahoney noted Frankfurt's last argument depends on the success of his first two arguments, so she did not address it in a separate section. Judge Mahoney addressed Frankfurt's other two arguments separately.

4

First, Judge Mahoney noted the ALJ did not credit Frankfurt's subjective complaints because he found "discrepancies in information reported by [Frankfurt] to various treating sources." Doc. No. 23 at 7 (quoting AR 30). The ALJ noted Frankfurt testified at the June 2017 hearing that he "always feel[s] like somebody's following [him] or there's somebody that's watching [him]." *Id.* (quoting AR 76) (citing AR 26). The ALJ determined these symptoms were inconsistent with Frankfurt's treatment records. *Id.* at 7–8 (citing AR 30). Judge Mahoney observed that the treatment records from Frankfurt's psychologist, Dr. Christine Rogers Cork, consistently reflect no evidence of psychotic symptoms, and that the same is true regarding the treatment records from Frankfurt's other providers, with one exception. *Id.* at 8. The exception is Frankfurt's psychiatrist, Dr. Kija Weldon, who Frankfurt began to see in April 2015 (a few months after the Appeals Council affirmed the denial of his prior disability application) and whose treatment records indicate that Frankfurt occasionally demonstrated paranoid symptoms. *Id.* at 8–9. Judge Mahoney concluded that although there is some support in the treatment records that Frankfurt complained about feeling that people were watching him, substantial evidence supports the ALJ's conclusion that the treatment records are inconsistent with Frankfurt's testimony that he constantly felt this way. *Id.* at 9.

Judge Mahoney also noted that Frankfurt testified at the hearing he cannot sit still long enough to watch a full television show and must get up and walk around after 10 to 15 minutes of sitting. *Id.* (citing AR 26, 81–82). However, Judge Mahoney found Frankfurt reported on other occasions that he watched television, went to the movie theaters with a friend, spent many hours a day gambling online, went to a local eatery to watch sports and spent a considerable amount of time at the library using public computers. *Id.* at 9–10 (citing AR 317, 320, 332, 335–36, 469, 675, 697, 705, 793). Judge Mahoney recognized that Frankfurt suffers from restless leg syndrome and treatment records indicate agitation, restlessness and fidgeting, but found substantial evidence supports the ALJ's determination that Frankfurt's restlessness did not result in an inability to sit for more than 15 minutes. *Id.* at 10.

Frankfurt also challenged the ALJ's characterization of the mental-health treatment records, arguing his four hospitalizations due to suicidal ideation and his providers' mental status examinations show he is more limited than found by the ALJ. *Id.* (citing Doc. No. 15 at 11–12). Judge Mahoney found the ALJ recognized each of Frankfurt's hospitalizations for being suicidal and what triggered those feelings. *Id.* at 11. Judge Mahoney found the ALJ did not "mischaracterize the evidence" (as Frankfurt argued (Doc. No. 15 at 12–13)) by noting the facts leading to Frankfurt's May 2016 hospitalization included his ongoing gambling problems and recent break-up and that his March/April 2014 hospitalization was the result of him trying to manipulate his girlfriend into giving him money for gambling. Doc. No. 15 at 11–12 (citing AR 28–30, 415–22, 802–15). Judge Mahoney concluded the ALJ could properly consider these facts when evaluating Frankfurt's subjective complaints related to his mental health. *Id.* at 12.

Frankfurt also argued the ALJ mischaracterized treatment providers' objective mental health examinations. *Id.* The ALJ found Dr. Weldon's examinations consistently showed "depressed mood, restricted affect, and fair insight and judgment, but are otherwise unremarkable." *Id.* (quoting AR 29). Judge Mahoney disagreed with Frankfurt's argument that in making this statement, the ALJ ignored Dr. Weldon's findings of psychotic symptoms, fidgeting, anxiety and suicidal ideation. *Id.* (citing Doc. No. 15 at 11). Judge Mahoney found Dr. Weldon's findings related to paranoia, fidgeting, anxiety and suicidal ideation do not support any greater RFC limitations than found by the ALJ. *Id.* Judge Mahoney explained that by saying Dr. Weldon's objective examinations were otherwise unremarkable, the ALJ did not appear to be referring to Dr. Weldon's mood findings, but rather her findings of alertness, normal orientation, clear and spontaneous speech (as well as slow speech a few times), linear and logical thought process, intact recent and remote memory, cooperation and calmness. *Id.* Judge Mahoney concluded substantial evidence supports the ALJ's characterization of Dr. Weldon's objective examinations as "otherwise unremarkable." *Id.* at 13.

Furthermore, although not specifically mentioned by the ALJ, Judge Mahoney noted Dr. Weldon's objective examinations were inconsistent with Frankfurt's subjective complaints related to his inability to maintain his personal hygiene, as well as other treatment records that fail to reflect Frankfurt had poor hygiene. *Id.* Judge Mahoney also noted Dr. Weldon consistently found intact memory and treatment records from other providers do not support greater limitations in attention and concentration than found by the ALJ. *Id.* Judge Mahoney concluded the treatment records and Frankfurt's activities of daily living do not support extreme limitations in maintaining attention and concentration when not suffering a migraine. *Id.* at 14.

Finally, Frankfurt challenged the ALJ's failure to fully credit his statements regarding the frequency and intensity of his migraine headaches. *Id.* Judge Mahoney noted the ALJ pointed to Frankfurt's inconsistent statements to providers regarding his headaches. *Id.* at 14 (citing AR 27). Judge Mahoney found substantial evidence supports the ALJ's conclusion that Frankfurt's July 2015 report of four migraines weekly to Dr. Marc Hines, his neurologist, was inconsistent with his statements to his Botox provider in June 2015 that he suffered only three mild headaches a week and four to five migraines a month and in October 2015 of four to five severe migraines a month. *Id.* at 15 (citing AR 27–28, 592, 714, 772–73). Judge Mahoney further found that although Frankfurt consistently sought treatment for and complained of migraine headaches, not all his migraines would render him unable to work. *Id.* Judge Mahoney noted the ALJ did not doubt that Frankfurt suffers migraines but found he exaggerated the intensity and frequency with which he suffers severe migraines and headaches that render him unable to concentrate or work. *Id.* Taking all the factors given by the ALJ into consideration, Judge Mahoney concluded substantial evidence supports the ALJ's decision not to fully credit Frankfurt's subjective complaints regarding his disabling migraines. *Id.*

Second, Judge Mahoney addressed the weight the ALJ gave the treating physicians' medical opinions. Frankfurt argued the ALJ did not give good reasons for assigning greater weight to the medical opinions of non-examining state agency

consultants than to the medical opinions of his treating neurologist, Dr. Hines, and his treating psychiatrist, Dr. Weldon. *Id.* at 16. Judge Mahoney noted the ALJ assigned Dr. Hines' opinion little weight because it was based largely on Frankfurt's subjective complaints regarding the frequency and severity of his migraines. *Id.* at 17 (citing AR 28). As discussed above, the ALJ already discounted Frankfurt's subjective complaints regarding the frequency and severity of his migraines. *Id.* Therefore, Judge Mahoney concluded substantial evidence supports the ALJ's decision to assign Dr. Hines' opinion little weight. *Id.*

Judge Mahoney noted the ALJ also assigned Dr. Weldon's medical opinion little weight, relying in part on her somewhat "unremarkable" mental status examinations and the triggers for Frankfurt's hospitalizations due to suicidal ideation. *Id.* at 18 (citing AR 29). The ALJ noted Dr. Weldon's opinion regarding the frequency that Frankfurt would miss work appeared primarily based on his migraines, not his depression or anxiety, and Frankfurt's statements regarding the frequency and intensity of his migraines had already been discredited. *Id.* (citing AR 28–29). Judge Mahoney agreed with Frankfurt the ALJ mischaracterized a treatment note as "the claimant's most recent appointment" following Dr. Weldon's RFC determination, noting it was instead the second-most recent appointment. *Id.* (quoting AR 29) (citing AR 656, 667–68). Even so, Judge Mahoney found it clear the ALJ considered all of Dr. Weldon's treatment records and the record as a whole and gave good reasons for assigning little weight to Dr. Weldon's opinion regarding Frankfurt's ability to pay attention for extended periods and the frequency that his migraines would cause him to miss work. *Id.* at 18–19. Judge Mahoney concluded that because the ALJ gave good reasons for discounting Frankfurt's treating-source opinions, the ALJ could properly assign more weight to the opinions of state agency consultants. *Id.* at 19.

For all these reasons, Judge Mahoney recommends that I affirm the decision of the ALJ and dismiss Frankfurt's case with prejudice.

## IV.    DISCUSSION

In objecting to the R&R, Frankfurt first argues that Judge Mahoney erred in finding the ALJ properly evaluated Dr. Weldon's opinion.[2] Doc. No. 24 at 3. Frankfurt contends the ALJ did not properly consider all of Dr. Weldon's relevant findings and did not give good reasons for the weight assigned to Dr. Weldon's opinion. *See id.* at 3–6. Second, Frankfurt argues the R&R erred in finding that the ALJ properly evaluated his subjective symptoms. *Id.* at 7.    Specifically, Frankfurt argues (1) the ALJ failed to properly weigh his anxiety and paranoia symptoms, (2) the ALJ did not make the finding that his testimony regarding his hygiene was inconsistent with other records and (3) the R&R improperly concluded that, because Frankfurt could attend doctor appointments while suffering a migraine, he could work during a migraine. *See id.* at 7–8. I will first consider the ALJ's evaluation of Dr. Weldon's medical opinion, followed by the ALJ's evaluation of Frankfurt's subjective symptoms.

### A.    Dr. Weldon's Medical Opinion

Frankfurt argues the ALJ did not provide good reasons for giving Dr. Weldon's opinion limited weight because the ALJ's decision did not acknowledge Dr. Weldon's findings of psychomotor fidgeting, anxiety, paranoia, hallucinations or suicidal ideation. *Id.* at 4–5.    Frankfurt also argues the ALJ wrongly discredited Dr. Weldon's opinion regarding absences from work by erroneously finding the opinion was primarily based on Frankfurt's migraines rather than his psychological symptoms. *Id.* at 6.    Finally,

---

[2] Frankfurt does not object to Judge Mahoney's findings that substantial evidence supports the ALJ's decision to assign Dr. Hines' opinion little weight and the ALJ could properly assign more weight to the opinions of the state agency consultants because the ALJ gave good reasons for discounting Frankfurt's treating-source opinions.  *See* Doc. No. 23 at 17, 19.   Because no objections have been made, I have reviewed these findings under a "clearly erroneous" standard. *See Grinder*, 73 F.3d at 795.  Judge Mahoney applied the appropriate legal standards for evaluating the weight the ALJ gave to Dr. Hines' opinion and the opinions of the state agency consultants.  I find no error in her recommendation and adopt the R&R as to Dr. Hines' opinion and the opinions of the state agency consultants.

Frankfurt argues that the ALJ's mischaracterization of his September 4, 2015, appointment with Dr. Weldon as the "most recent opinion following" her RFC assessment is not a good reason to discount the weight assigned to her opinion. *Id.* (quoting AR 29).

"The ALJ must give controlling weight to a treating physician's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848–49 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ must give "good reasons . . . for the weight [the ALJ gives a] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). An ALJ may discount or disregard the opinion of a treating physician if other medical assessments are supported by more thorough or better evidence. *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). When medical evidence on the record as a whole contradicts the treating physician's opinion, that opinion is also afforded less deference. *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999).

Dr. Weldon became Frankfurt's treating psychiatrist on April 23, 2015. AR 644–48. She thereafter saw Frankfurt thirty-four times, on a regular basis (once or twice a month) throughout the relevant time period. *See* AR 640–48, 661–62, 667–68, 673–75, 677–79, 681, 683, 685, 687, 689, 691, 694–97, 699, 701, 703, 705–07, 709–10, 712. Dr. Weldon completed her RFC assessment of Frankfurt on August 7, 2015, during his seventh appointment with her. AR 653–56, 661. The ALJ stated the following regarding Dr. Weldon's RFC assessment opinion:

> Dr. Weldon completed an assessment form provided by the claimant's attorney representative in August 2015 (Exhibit B12F). She opined that the claimant shows "marked" or "extreme" limitations in understanding and remembering detailed instructions, maintaining attention and concentration for extended periods, performing within a schedule, maintaining attendance, and being punctual, working near others without being distracted by them, maintaining pace, interacting with the public, adjusting

to change, and tolerating normal levels of stress. She further opined that the claimant is likely to miss work 6-7 days per month. Dr. Weldon attributed the claimant's limitations to his depression and to his migraines. Her opinions are given limited weight, noting that the claimant's mental status exams at his appointments with Dr. Weldon show depressed mood, restricted affect, and fair insight and judgment, but are otherwise unremarkable. The claimant's history of suicidal ideation is typically tied to his threats when not indulged by family with money for gambling. Furthermore, Dr. Weldon's opinions about the claimant's restrictions are based in part on his physical condition with headaches, not his mental condition. The progress note from the claimant's most recent appointment following in September 2015 with Dr. Weldon described him as feeling better because he had acquired additional resources and his brother was helping him get an apartment.

AR 29. Further, the ALJ referenced Dr. Weldon's treatment notes elsewhere in his decision. *See* AR 28 ("[Frankfurt] reported to psychiatric providers that headaches worsened his depression.), AR 30 ("Updated psychological treatment records indicate ongoing issues with depression and suicidal ideation . . . .").

### 1. Dr. Weldon's Findings on Suicidal Ideation, Anxiety, Psychomotor Fidgeting and Psychotic Symptoms

Contrary to Frankfurt's assertion, the ALJ did acknowledge and discuss Dr. Weldon's suicidal ideation findings. The ALJ noted that Frankfurt suffers from major depressive disorder. AR 23. The ALJ also acknowledged Frankfurt has a history of depression and began seeing Dr. Weldon after being hospitalized for suicidal ideation. AR 28–29. The ALJ noted treatment records indicating "ongoing issues with depression and suicidal ideation." AR 30. The ALJ discussed Dr. Weldon's findings of depression and restricted affect.[3] AR 29. The ALJ also discussed Dr. Weldon's findings of suicidal ideation and some of the stressors related to Frankfurt's past hospitalizations as well. AR

---

[3] Restricted affect is "emotional expression that is reduced in range and intensity. It is common in depression . . . ." *Restricted Affect*, APA Dictionary of Psychology, https://dictionary.apa.org/restricted-affect.

29.    The ALJ further noted Frankfurt's suicidal ideation did not prevent him from performing activities of daily living.  *See* AR 25–26.

The ALJ also acknowledged and discussed Dr. Weldon's findings of anxiety. While the ALJ did not specifically mention these findings in his discussion of Dr. Weldon's RFC assessment, he did determine Frankfurt suffers from anxiety.  AR 23. The ALJ noted that Dr. Weldon's RFC assessment concluded Frankfurt has limitations in working near others, interacting with the public, adjusting to change and tolerating normal stress levels (AR 29), things Dr. Weldon included in her treatment notes as causes of Frankfurt's anxiety.  *See* AR 643 (noting hypervigilance), AR 667 (anxiety in the context of significant social stressors), AR 675 (Frankfurt worried about people talking about him), 677 (anxiety in crowds), AR 678 (anxiety around others), AR 701 (anxious when riding the bus), AR 703 (irritable when people are around him).  The ALJ considered Dr. Weldon's assessment and notes in formulating his RFC by including limitations related to interacting with others and tolerable stress levels.  *See* AR 25 (including in Frankfurt's RFC that "[h]e should have no exposure to hazards and no exposure to extreme noise.  He can perform simple, routine work with no contact with the public, and no fast rate pace requirement.").

Frankfurt is correct that the ALJ did not explicitly acknowledge and discuss Dr. Weldon's treatment notes of psychomotor fidgeting.  However, Frankfurt did not allege that he suffers psychomotor fidgeting,[4] and Dr. Weldon did not note psychomotor

---

[4] A definition of psychomotor fidgeting is not provided, nor does it appear to be a recognized disorder.  Psychomotor *agitation* causes an inability to stay still or remain calm.  *Everything You Should Know About Psychomotor Agitation*, Healthline, https://www.healthline.com/health/psychomotor-agitation (a search for psychomotor fidgeting yields no results).  However, Dr. Weldon never indicated in her mental status examinations that Frankfurt suffered from psychomotor agitation, even though a box for it was available for Dr. Weldon to check.  *See, e.g.*, AR 643.  It appears that, by "psychomotor fidgeting," Frankfurt means frequent or continuous fidgeting.

fidgeting in her opinion. *See* AR 127, 140, 653. The ALJ did not find Frankfurt suffers a severe impairment from psychomotor fidgeting. *See* AR 23. The ALJ explicitly found that Frankfurt's alleged conditions, and those otherwise found in the medical evidence that are not severe impairments,[5] have only a minimal effect on his ability to perform basic work activities. AR 23. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998). Moreover, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* I find that although the ALJ did not specifically discuss Dr. Weldon's findings of psychomotor fidgeting, the ALJ was not required to do so and the ALJ's decision demonstrates he considered all of Dr. Weldon's findings and the record as a whole.

The ALJ did not specifically mention paranoia and hallucinations while discussing Dr. Weldon's RFC assessment, likely because Dr. Weldon did not mention paranoia or hallucinations in her assessment. *See* AR 653. But the ALJ did note in his report "discrepancies in information reported by the claimant to various treating sources when addressing symptom levels, effectiveness of treatment, and capabilities in functioning." AR 30. The ALJ found the treatment notes of Frankfurt's psychologist, Dr. Cork, consistently indicated no psychotic symptoms.[6] AR 30. As the ALJ noted, this is inconsistent with Frankfurt's reports to other treating sources, specifically Dr. Weldon. *See* AR 30. Dr. Weldon's treatment notes indicate Frankfurt occasionally demonstrated

---

[5] The ALJ found Frankfurt suffers from the following severe impairments: major depressive disorder, antisocial personality disorder, migraine headaches, anxiety, history of alcohol abuse and gambling addiction. AR 23. The other impairments Frankfurt alleged include Cluster B personality disorder, insomnia, restless leg syndrome and high pulse. AR 127, 140.

[6] Dr. Cork did note during an appointment on December 1, 2016, that Frankfurt said he had been seeing figures in shiny, reflective surfaces since starting a new medication. AR 682. However, in all of Dr. Cork's eighteen meetings with Frankfurt, she always found "no evidence of psychotic symptoms." *See* AR 660, 666–67, 680, 682, 684, 686, 688, 690, 692–93, 698, 700, 702, 704, 708, 711, 713.

psychotic symptoms during the same timeframe Frankfurt was being treated by Dr. Cork. *See, e.g.*, AR 640 (noted paranoia), 641 (felt like someone was watching him), 644 (some paranoia), 661 (audio hallucination), 675 (worried about people talking about him), 678 (hearing whispers), 679 (visual hallucination), 681 (audio and visual hallucinations). Notably, Frankfurt often reported paranoia and hallucinations to Dr. Weldon but at appointments with Dr. Cork within the same week or so did not report these symptoms. *See* AR 661 (Dr. Weldon noted an audio hallucination on August 7, 2015), *but see* AR 660 (Dr. Cork noted no psychotic symptoms on August 18, 2015); *see* AR 679 (Dr. Weldon noted a visual hallucination on December 29, 2016), *but see* AR 680 (Dr. Cork noted no psychotic symptoms on December 22, 2016). Substantial evidence supports the ALJ's finding that discrepancies exist in Frankfurt's reported psychotic symptoms to Dr. Cork and Dr. Weldon. Given the ALJ's finding of discrepancies, I find it highly unlikely the ALJ did not consider Dr. Weldon's findings related to psychotic symptoms—the only treatment records that reflect Frankfurt occasionally demonstrated paranoid symptoms— especially given it is clear the ALJ reviewed other important aspects of Dr. Weldon's findings. *See Wildman v. Astrue*, 596 F.3d 959 , 966 (8th Cir. 2010) (given the ALJ's specific references to findings in a treating source's notes, the court found it highly unlikely that the ALJ did not consider and reject the treating source's statement that the claimant was markedly limited even though the ALJ did not explicitly refer to it).

The ALJ described Dr. Weldon's mental status examinations of Frankfurt as showing "depressed mood, restricted affect, and fair insight and judgment, but are otherwise unremarkable." AR 29. Frankfurt takes issue with Judge Mahoney's finding that by saying Dr. Weldon's objective examinations were otherwise unremarkable, the ALJ did not appear to be referring to Dr. Weldon's mood findings, but rather her findings of alertness, normal orientation, clear and spontaneous speech (as well as slow speech at times), linear and logical thought processes, recent and remote memory, cooperation and calmness. Doc. No. 24 at 5; Doc. No. 23 at 12. Frankfurt argues the distinction drawn by Judge Mahoney was not made by the ALJ and it is the ALJ's duty, not the court's, to

provide good reasons for discounting a treating doctor's opinion. Doc. No. 24 at 5.

Frankfurt is incorrect in asserting Judge Mahoney drew the distinction she discussed in her R&R. In Dr. Weldon's mental status examinations of Frankfurt, which are included in her treatment notes for every appointment, Dr. Weldon checked or left unchecked boxes indicating the status of Frankfurt's mental health. *See, e.g.*, AR 661. In the mental status exams, Dr. Weldon consistently marked that Frankfurt was alert and oriented, well-groomed and casually dressed, cooperative and calm, spontaneous and clear in speech (although sometimes slow), normal in his gait, linear and logical in his thought process and had intact recent and remote memory. Dr. Weldon also consistently noted Frankfurt was depressed and restrict in affect, along with fair insight and judgment and some fidgeting and paranoia. *See* AR 640–48, 661–62, 667–68, 673–75, 677–79, 681, 683, 685, 687, 689, 691, 694-97, 699, 701, 703, 705-07, 709–10, 712.

Judge Mahoney's explanation of the ALJ's characterization of Dr. Weldon's mental status exams is accurate because the exams do typically indicate normal findings except in categories related to depression, restricted effect, insight and judgment and occasional psychotic symptoms. Substantial evidence supports the ALJ's characterization of Dr. Weldon's mental status examinations as "otherwise unremarkable." I find the ALJ considered all of Dr. Weldon's treatment records—including the findings of suicidal ideation, anxiety, psychomotor fidgeting and psychotic symptoms—and the record as a whole and gave good reasons for giving her opinion limited weight.

### 2.     *Dr. Weldon's Opinion Regarding Absences from Work*

Frankfurt argues the ALJ improperly discredited Dr. Weldon's opinion regarding his absences from work because the ALJ wrongly found that opinion was based primarily on Frankfurt's migraines. Doc. No. 24 at 6. Frankfurt argues Dr. Weldon identified limitations in Frankfurt's ability to attend work that were attributable only to psychological symptoms. *Id.* The ALJ noted "Dr. Weldon's opinions about [Frankfurt's] restrictions are based *in part* on his physical condition with headaches, not

his mental condition." AR 29 (emphasis added). The ALJ was correct in this characterization because Dr. Weldon included in her RFC assessment that Frankfurt has "debilitating migraines that cause him to miss work [and] add to his depression." AR 655. Dr. Weldon also noted in her RFC assessment migraines "add to [Frankfurt's] depression." AR 653. The ALJ discounted Dr. Weldon's opinion as to Frankfurt's migraines because he had already discredited Frankfurt's statements regarding the frequency and intensity of his migraines.[7] *See* AR 28.

As the ALJ noted and recognized, Dr. Weldon's opinion regarding work absences was also partly based on Frankfurt's mental condition. The ALJ discounted Dr. Weldon's opinion as to Frankfurt's mental condition because his history of suicidal ideation "is typically tied to his threats when not indulged by family with money for his gambling" AR 29. The ALJ recognized in one treatment note Dr. Weldon described Frankfurt as feeling better because he had acquired additional resources and his brother was helping him get an apartment. AR 29. As noted by the ALJ, the facts leading to Frankfurt's May 2016 hospitalization included his ongoing gambling problem. AR 29–30, 802–15. Additionally, the ALJ noted Frankfurt's March/April 2014 hospitalization was the result of Frankfurt trying to manipulate his girlfriend into giving him money to gamble. AR 28–30, 415–22. The ALJ gave good reasons, supported by substantial evidence, for giving Dr. Weldon's opinion limited weight regarding work absences.

### 3. *Dr. Weldon's September 4, 2015 Appointment with Frankfurt*

Frankfurt argues the ALJ did not give good reasons for the weight assigned to Dr. Weldon's opinion because he was mistaken when he referred to the September 4, 2015, appointment with Dr. Weldon as the "most recent appointment following" Dr. Weldon's assessment. Doc. No. 24 at 6 (quoting AR 29). The ALJ correctly noted Dr. Weldon wrote at the September 4, 2015, appointment Frankfurt was "[f]eeling better since finding

---

[7] This will be discussed *infra* Part IV.B.3.

more resources. Brother is in town [and] helping him find an apartment." AR 667. But Frankfurt is correct in noting the ALJ erred in calling this the most recent appointment following Dr. Weldon's assessment. *See* AR 653, 668 (Dr. Weldon completed her assessment on August 7, 2015, and met with him again on August 27, 2015). This error does not mean that the ALJ failed to give good reasons for the weight assigned to Dr. Weldon's opinion. *See Johnson v. Apfel*, 240 F.3d 1145, 1149 (8th Cir. 2001) ("Any arguable deficiency . . . in the ALJ's opinion-writing technique does not require this Court to set aside a finding that is supported by substantial evidence."); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) ("We will not set aside an administrative finding based on an arguable deficiency in opinion-writing technique when it is unlikely it affected the outcome.").

The importance of the ALJ's reference to the September 4, 2015, note is not the date of the note, but the contents of the note, which the ALJ correctly noted. Additionally, the ALJ did not rely solely on the September 4, 2015, treatment note in discounting Dr. Weldon's opinion. As discussed above, the ALJ considered and discussed the relevant aspects of Dr. Weldon's treatment records. The ALJ gave good reasons for the weight assigned to Dr. Weldon's opinion and considered all of Dr. Weldon's treatment records and the record as a whole.

The court may not reverse the ALJ's decision simply because the court may have reached a different conclusion or because substantial evidence supports a contrary conclusion. *Fentress*, 854 F.3d at 1021. I find there is substantial evidence on the record to support the reasons the ALJ gave for not attributing substantial weight to Dr. Weldon's medical opinion.

**B.** *Frankfurt's Subjective Complaints*

**1.** *Subjective Complaints About Anxiety and Paranoia*

As to his subjective complaints, Frankfurt first argues the ALJ failed to consider Dr. Weldon's treatment notes reflecting symptoms of anxiety and paranoia. Doc. No. 24 at 7. Frankfurt contends Judge Mahoney acknowledged the ALJ failed to note Dr. Weldon's notes concerning anxiety and paranoia. *Id.* (citing Doc. No. 23 at 12). This is incorrect. Judge Mahoney did acknowledge the ALJ failed to specifically reference Dr. Weldon's treatment notes on anxiety, but nevertheless correctly noted the ALJ found Frankfurt suffered from anxiety and included limitations in his RFC related to anxiety, as I discussed above. Doc. No. 23 at 12.

Further, Judge Mahoney correctly noted the ALJ did not credit Frankfurt's subjective complaints related to paranoia, finding "discrepancies in information reported by [Frankfurt] to various treating sources" eroded his credibility. *Id.* at 7 (quoting AR 30). As the ALJ recognized, Frankfurt testified at the hearing that he felt like someone was always watching him and following him. AR 26, 76. The treatment records are inconsistent with this statement, as I discussed already—Dr. Cork never noted psychotic symptoms and Dr. Weldon noted psychotic questions occasionally. *See* AR 30; Doc. No. 23 at 8. Substantial evidence supports the ALJ's conclusion that the treatment records are inconsistent with Frankfurt's testimony regarding his paranoia.[8] *See Goff*, 421 F.3d at 792 (an ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole). For reasons discussed here and in my previous discussion related to Dr. Weldon's findings of anxiety and paranoia, I find the ALJ considered Dr. Weldon's findings of anxiety and paranoia and the record as whole and gave good reasons for discounting Frankfurt's subjective complaints about his paranoia.

---

[8] While Frankfurt did not specifically object to Judge Mahoney's finding that substantial evidence supports the ALJ's conclusion that the treatment records are inconsistent with Frankfurt's testimony he always felt as if someone was watching him and following him (*see* Doc. No. 23 at 9), I have conducted a de novo review and agree with Judge Mahoney, as noted above.

## 2. Subjective Complaints About Hygiene

Frankfurt notes that Judge Mahoney found Frankfurt's testimony regarding his inability to maintain hygiene inconsistent with Dr. Weldon's mental status examinations, which noted appropriate grooming, and argues this was not a finding made by the ALJ, nor is it inconsistent. Doc. No. 24 at 8 (citing Doc. No. 23 at 13). Frankfurt states he saw Dr. Weldon at most once every two weeks and, further, the ability to shower before a doctor appointment is not inconsistent with an allegation of disability. *Id.* Frankfurt is correct that the ALJ did not find Frankfurt's testimony that he could shower at best once a week (AR 84) is inconsistent with Dr. Weldon's treatment notes that he was appropriately groomed or well groomed at appointments. AR 643, 646, 650, 662, 667, 683, 696, 706, 709. Regardless, substantial evidence supports the ALJ's decision not to fully credit Frankfurt's subjective complaints regarding his ability to complete daily activities.[9] As the ALJ noted, despite Frankfurt's subjective complaints, the record shows Frankfurt is still able to do chores, shop for groceries, work out, prepare simple meals, watch television, go to movies and keep appointments. AR 25–26, 332–35, 469, 793; *see Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (noting that "cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."). The ALJ could discredit Frankfurt's subjective complaints based on inconsistencies with Frankfurt's reported activities.

---

[9] Frankfurt did not specifically object to Judge Mahoney's finding that substantial evidence supports the ALJ's decision to discredit Frankfurt's testimony that he couldn't sit for more than fifteen minutes, nor does he specifically object to the ALJ's finding that he was able to engage in several daily activities despite his subjective complaints. *See* Doc. No. 23 at 10, AR 25–26. Nevertheless, I have conducted a de novo review and find substantial evidence supports the ALJ's decision not to fully credit Frankfurt's testimony based on inconsistencies between his subjective complaints and daily activities, as discussed above.

### 3. *Subjective Complaints About Migraines*

Frankfurt objects to Judge Mahoney's finding that not all of Frankfurt's migraines render him unable to work based on a function report indicating Frankfurt could attend a doctor's appointment while experiencing a migraine with a pain level of eight out of ten. Doc. No. 24 at 8 (citing Doc. No. 23 at 15 (citing AR 327)). Frankfurt argues the ability to attend a doctor's appointment is not analogous to the ability to perform work and he does not need to prove he is bedridden or completely helpless to be found disabled. *Id.* at 8–9. Even if I agree with Frankfurt that the ability to attend a doctor's appointment is not analogous to the ability to perform work, substantial evidence on the record as a whole still supports the ALJ's finding that Frankfurt was inconsistent in reporting the frequency and intensity of his migraines to his various treating sources.[10] *See* AR 26, 28. As Judge Mahoney noted, Frankfurt reported three mild headaches a week and four to five migraines a month to his Botox provider in June 2015, four migraines weekly to Dr. Hines in July 2015 and four to five migraines a month to his Botox provider in October 2015. *See* Doc. No. 23 at 14–15. Frankfurt gave these conflicting statements close in time, and four to five migraines a month is much less than four migraines weekly. Further, as noted above, substantial evidence supports the ALJ's finding Frankfurt was able to engage in activities daily in life despite his subjective complaints about his migraines. I find that substantial evidence supports the ALJ's decision to discredit Frankfurt's subjective complaints regarding migraines because of his inconsistent statements and inconsistent daily activities.

---

[10] Frankfurt did not specifically object to Judge Mahoney's conclusion that substantial evidence supports the ALJ's conclusion that Frankfurt was inconsistent in reporting his migraine frequency and intensity to treatment providers. *See* Doc. No. 23 at 15. I have conducted a de novo review of this finding, as discussed above, and agree with Judge Mahoney.

## V.    CONCLUSION

For the reasons set forth herein:

1.    Frankfurt's objections (Doc. No. 24) to the Report and Recommendation (Doc. No. 23) are **overruled**.

2.    I **accept** the Report and Recommendation (Doc. No. 23) without modification.  *See* 28 U.S.C. § 636(b)(1).

3.    Pursuant to Judge Mahoney's recommendation:

    a.    the Commissioner's determination that Frankfurt was not disabled is **affirmed**; and

    b.    Judgment shall enter in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 30th day of September, 2019.

_____
Leonard T. Strand, Chief Judge